Statement of the Case.
MONROE, J.
This suit was brought by the parents of a young man to recover certain damages alleged to have been sustained by reason of injuries received by him and of his death. The suit was dismissed on exception •of no cause of action, and plaintiffs appealed. Thereafter H. V; McCain died, and the case as to his claim has been abandoned, and is now before the court only as to the demand of Mrs. McCain. The petition alleges that the •defendant company is the owner of a building in Shreveport in which there is a theater •operated under lease by the Interstate Amusement Company, which was opened to the public before the building was completed; that upon a night in November, 1906, Percy McCain, plaintiff’s son, attended a performance there as a paying guest, and when the performance had concluded walked from the balcony, where he had been seated, to the ground floor, and, finding himself opposite the McNeil street door, marked “Exit” and having a red light above it, opened the same (it not being locked .or otherwise guarded) and ■stepped out into the darkness, falling headlong to the concrete sidewalk and fracturing his skull, from which injury, after suffering great pain, he died in a few hours.
It alleges that the building in question fronts on Milam street, and has a corridor leading therefrom to the ticket door in. the rear, and another corridor, forming a right angle with that mentioned, leading to the ticket door from McNeil street; that at the McNeil street end of the corridor last mentioned there is a double door, opening upon the street, but six or seven feet above the sidewalk (which declines from Milam street); and that at the time of the accident there were no steps connecting said door and sidewalk, though there was painted in large letters over the door the word “Exit,” and above each door there was a red electric light, which, as stated on the .programs, indicated an exit. It alleges that the suffering and death of plaintiff’s son “was caused by the fault and gross negligence of the defendant company in leasing and permitting said theater building to be used for public performances before the steps had been provided “for the doors opening on McNeil street above grade, especially when over such doors had been painted the word ‘Exit’ and red lights had been placed denoting same.”
It further alleges that at the time defendant delivered the building to the Interstate Amusement Company, the lessee at the time of the accident, the door opening into space on McNeil street was not provided with a lock and key, or any other device to close it effectively and prevent persons from walking through it; the only means of securing it being a bolt or latch, which could be easily released from the inside. And it further alleges that the decedent was 19 years old, unmarried, and of good habits and earning capacity; that his right of action survived in favor of petitioners; and that they have their own right of action growing out of the death and loss of their son, they “being people of small means, advanced in years.” It is not alleged that decedent resided with or contributed to the support of the petitioners.
*309 Opinion.
It will be observed that it is distinctly alleged that tbe theater in which the accident •occurred is under lease to and is operated by a company other than defendant, which company is not made a party to the suit, and that the negligence charged against defendant is that it leased said theater and permitted it to be used as such “before the steps had been provided for the doors opening on McNeil street, * * * especially when over said doors had been painted the word ‘Exit’ and red lights had been placed denoting same”; it being elsewhere stated that the programs contained the notice or information that the exists were indicated by red lights, and that the door was unprovided with loclr and key, or other device to fasten it effectively, when delivered by defendant to the lessee. It seems •evident, construing the different ■ allegations together, that some of the acts and omissions to which the accident is attributed are not •chargeable to the defendant. Thus, in alleging that the theater is leased and is operated by the lessee, plaintiff in effect alleges that •defendant had no right to enter it and no authority to regulate its internal police, and, as the power to determine whether the patrons should enter and depart through one door or ¡both was vested exclusively in the lessee, so the responsibility devolved upon it of making proper provisions for the carrying into effect •of such regulations as it saw fit to adopt upon that subject. Both the defendant and the lessee assuredly knew that a door six or seven feet above the sidewalk, unprovided with ■steps, was not to be used either as an entrance or an exit, and it must be assumed that the building was delivered and accepted with a tacit, if not an expressed, understanding to that effect, and if, after going into possession, the lessee published programs con■taining notices that the exits would be indicated by red lights, and then, maintaining red lights over the door in question, allowed it to remain open or unguarded, so that its patrons were deceived into the belief that they could safely pass through it into the night, it was no more the fault of the lessor than if the lessee had thus indicated as an exit any window or other aperture in the building not intended to be used for that purpose. Counsel for defendant furnishes us with the following citation (among others) from an opinion handed down from the Supreme Court of Massachusetts, which appears applicable to the case here presented, to wit:
“In an action for injuries caused by the plaintiff falling through a hole in the floor of a building owned by defendant, it appears that the building was occupied by a tenant who had manufactured some bakers’ troughs for plaintiff’s employer, and that plaintiff was removing the troughs when injured. The hole was used for passing material from that floor to the other. It was not covered or protected in any way when plaintiff fell through. Held, that defendants were not liable; the fault, if any, being that of the tenant.” Caldwell v. Slade, 156 Mass. 84, 30 N. E. 87.
If, as would appear to have been the fact, the tenant in the cited case leased the building with the unprotected hole in the floor because he needed the hole for his business, the owner of the building could not reasonably have been held responsible for his failure to make such provision as was necessary to keep himself or those whom he brought on the premises from falling through; and so, in the instant case, non constat but that the lessee preferred, or required, that the owner should build no steps leading from the McNeil street door of the building, in order that it might be accessible to vans and wagons, thereby facilitating the introduction into and the removal from the building of theatrical paraphernalia and baggage. But, however that may be, it seems apparent upon the face of the petition that the defendant, in leasing the building and in putting the lessee in possession, never intended that the door in question should be held out to the public as a safe means of exit, and, if it was so held-out or allowed to be used, it was done by the ten *311 ant in possession, oyer whose disposition the owner could exercise no control.
We therefore conclude that the judgment appealed from is correct, and it is accordingly affirmed.