GALLMAN v. YOUNG, Appellant

---

(February 15, 1926. Opinion and Decree)
(March 1, 1926. Rehearing Refused)
(March 29, 1926. Writ of Certiorari and Review denied by the Supreme Court.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Landlord and Tenant —Par. 66.**

A lessor, may, by contract, shift from himself to his lessee the duty imposed upon him by the general law of seeing to the safety of the building owned by him, and may thus absolve himself of all duty toward others on the premises, through license or invitation granted them by the lessee.

2. **Louisiana Digest—Landlord and Tenant —Par. 66.**

A lesee cannot convey to others on the premises leased by him a greater right than he himself possesses.

(Civil Code Art. 2695. Editor's note.)

Appeal from the Civil District Court, Parish of Orleans, Division "E". Hon. William H. Byrnes, Jr., Judge.

Action by Mrs. Amelai Gallman, widow

of Louis A. Klein against Mrs. Wilhelmina Young, wife of Jacob Young, and Mr. Jacob Young for damages for physical injuries. Judgment for plaintiff and defendant appealed.

Judgment reversed.

Maurice Rooney, Eugene Stanley and M. C. Scharff, of New Orleans, attorneys for plaintiff, appellee.

Dart and Dart, of New Orleans, attorneys for defendant, appellant.

BELL, J.    Plaintiff sues defendants in damages for the sum of $10,000.00 for physical injuries which she claims to have sustained by falling down defective steps attached to property belonging to the defendants. It is alleged in the petition that plaintiff was a sub-tenant of one Mrs. Thomas Agnew, the lessee of defendants' property; that under a monthly rental she was occupying a rear room on the premises, and while using the steps leading therefrom into the yard, the lowest tread of the steps, which was in a rotten and dangerous condition, callapsed under her weight, causing her to fall and to sustain severe and permanent injury to her right hip. It is also alleged that long prior to the time petitioner moved into the premises defendants were notified and informed of the defective and rotten condition of the steps.

Defendants admit that at the time of the accident the property was leased to Mrs. Agnew. In all other respects, the allegations of the petition are denied. The answer concludes with the following special defense:

"Respondents further aver and this only in the alternative, and should the court find that the plaintiff has suffered injuries from an accident occurring on respondent's premises that they are not liable to this plaintiff for anything because as alleged by plaintiff, your respondents entered into a written lease with Mrs. Agnew, copy of which is attached hereto whereby the dwelling 1029 Jackson Avenue was leased to the said Mrs. Agnew for the term of twelve months, commencing on the first day of October, 1922, and ending on the last day of September, 1923, at the rate of $75.00 per month, payable at the end of each month. The said Mrs. Agnew acknowledging that she received the premises and appurtenances in good condition and she obligated herself to so keep and return the same to respondents at the termination of the lease. She furthermore stipulated your respondents would not be liable for damages caused by vices or defects of the leased property except in the case of positive neglect to have the repairs made after reasonable time and after notice given. That she also bound and obligated herself, as shown by the lease, not to sub-lease the premises in whole or in part.

"That the plaintiff having as she alleges sub-leased a part of the premises to Mrs. Agnew in violation of the prohibition of sub-leasing, was a trespasser on the premises so far as respondents are concerned and have no right as to them. Respondents further show that if plaintiff did acquire rights as a sub-tenant, whatever rights she had therein are governed by the same conditions and stipulations set out in the lease aforesaid. That is to say, that your respondents are not liable for any damages plaintiff may have suffered by reason of any defects or vices of the premises save those due from positive neglect. Respondents show that this property has never been neglected and always kept in good condition. That respondents were under no obligation to her to repair the property and if she was injured in the manner stated, she herself brought on the injury by an utter disregard of her own safety and of the obligations assumed under her said lease."

There was judgment for plaintiff in the sum of $5,000.00. Defendants have appealed and plaintiff, answering the appeal, prays for the increase in the quantum allowed to that originally claimed.

The learned trial judge concluded—we think, correctly—that the plaintiff was not

a sub-tenant, but simply a roomer or lodger of the tenant of the property at the time of the accident. (Jackson vs. Matthews, 9273 Orl. App.; Black vs. Ocean Accident Insurance Co., 12 Ct. of App. 284.)

The evidence in the case also justified the findings of fact by the court a qua, to the effect that the plaintiff was injured as claimed, and that the accident was caused by the defective conditions of the steps belonging to and forming part of defendants' property. We further find that defendants were wholly ignorant of these conditions and that no notice thereof was ever sent to or given defendants by their tenant, Mrs. Agnew. The allegations in plaintiff's petition to the contrary are unsupported by any proof, besides, there is no allegation that such notice was given by plaintiff to defendants. Ciaccio vs. Carbajal, 142 La. 125, 76 South. 583.

Noting, as we have, our conclusions as to the facts of this case, and further considering the total absence of any contractural relations between the plaintiff and defendants, there remains for determination, as the important issue in this case, the following question of law:

Can a lessor, by contract, shift from himself to his lessee, the primary obligation imposed on the lessor by law of seeing to the safety of his building, so as to absolve himself from all responsibility to others who derive through his lessee the right to be on the leased premises?

This court has already had occasion to answer the foregoing question in the affirmative. In Taul vs. Graffato, 13 Ct. of App., 338, a tenant's mother-in-law, injured while visiting him, sued the owner of the premises who had leased to the tenant under a written contract of lease, almost identical in terminology with that now under consideration. Recovery was denied the plaintiff, who, like the present plaintiff, was shown to have had no con-

tractual relations whatever with the owner of the building. Referring to the jurisprudence of our Supreme Court, we note, in the Taul case, as we do now (ten years later), our inability to find any case in which the plaintiff, other than a lessee, was suing the owner (lessor) of property leased under written contract, the terms of which imposed upon the lessee the duty of making the repairs.

There can be no question as to the primary obligation imposed by specific provisions of the Civil Code upon the owner of property to keep it in repair, so that neither the building nor materials composing it may injure others. This is so whether the building be leased or not. In McConnell vs. Lemley, 48 La. Ann. 1438, 20 South. 887, the court declared this obligation or duty on the part of the owner to exist only in respect to neighbors and passersby. This ruling obtained for over eight years, when, in Schoppel vs. Daly, 112 La. 291, 36 South. 322, the restriction thus made was overruled, and the duty of the owner to keep his building safe was extended so as to protect those rightfully within as well as those without the building. This we understand to be still the law, repeatedly recognized in the following decisions:

Cristadora vs. Von Behren's Heirs, 119 La. 1025, 44 South. 852.

Boutee vs. New Orleans Terminal Co., 139 La. 946, 72 South. 513.

Wise vs. Lavigne, 138 La. 218, 70 South. 103.

Allain vs. Frigola, 140 La. 982, 74 South. 404.

Ciacio vs. Carbajal, 143 La. 125, idem 145 La. 869, 83 South. 73.

Thompson vs. Cook, 147 La. 922, 86 South. 332.

Harris vs. Tennis, 149 La. 295, 88 South. 912.

Breen vs. Walters, 150 La. 578, 91 South. 50.

Davis vs. Hochfelder, 153 La. 183, 95 South. 598.

A like ruling was made in Bogel vs. Puchoff, 9339 Orl. App. (Book 65), where this court held that although the evidence in the case was not sufficient to establish the existence of such a lease as is now under consideration, a person proving right through a lessee to be on leased premises, might recover from the owner thereof for injuries sustained because of the owner's negligence in failing to keep his building in proper repair. Our ruling in the case was predicated upon an appreciation of the action as one solely *ex delicto*, wherein liability was based upon neglect on the part of the owner to observe the general duty imposed on him by law—not by contract—toward anyone found rightfully on his premises. See also Pierre vs. Levy, 9143 Orl. App.

In the present case, it is strongly contended for plaintiff that since the decision rendered in Badie vs. American Brewing Co., 142 La. 854, 77 South. 768, this court can no longer adhere to its ruling in the case of Taul vs. Graffato. In the Badie case, the plaintiff, while visiting a friend to whom a tenant of the building, named Harold, had rented an upstairs front room, went out of the room upon a gallery, and while leaning against the dilapidated railing, thereof, fell to the street, sustaining injuries for which she sought and obtained recovery by action *ex delicto* from the owner of the building who had leased the property to Harold. It does not appear from the court's statement of the facts in the case that the lease with Harold shifted to him the lessor's responsibility for the condition of the safety of the building. We assume that no such stipulation was made. We are unable to find any language used in the Badie case that puts that decision at variance with or contrary to what was held by this court in the Taul case, except the following:

"The owner of a building cannot, by any contract or agreement with the lessee, tenant or sub-tenant, absolve himself from responsibility to others for injuries resulting from a failure to maintain the leased premises in a safe condition. See Schoppel vs. Daly, 112 La. 201, 36 South. 322; Cristadora vs. Von Behren's Heirs, 119 La. 1025, 44 South. 852, 17 L. R. A. (N. S.) 1161; Wise vs. Lavigne, 138 La. 218, 70 South. 103."

Our appreciation of the facts and of the law as expounded in the Badie case leads us to conclude that the above quoted excerpt from the court's opinion was but obiter. It should be noted that in support of the language there used, the court cited three of its former decisions. In none of these cited cases, nor in the Badie case, was a contract of lease involved such as is now before us or as existed in the Taul case. In fact, it is interesting to observe that the court, in the cited case of Cristadora vs. Von Behren's Heirs, used the following language as expressive of its views concerning what the law would be where responsibility was shifted by express contract of lease from lessor to lessee. The court there said:

"It may be that, with regard to all those who derive through the lessee the right to be on the leased premises, the lessor may, by contract, shift from himself to the lessee the duty of seeing to the safety of the building, and may in that way absolve himself from all duty toward the guests of the lessee; but so long as he does not do this, but retains to himself the duty of seeing to the safety of the house, he plainly and manifestly owes that duty as much to those who are rightfully in the house as to those who happen to be passing by it."

It is also interesting to note that in Clay vs. Parsons, 144 La. 989, 81 South. 597, where recovery was denied the plaintiff who was injured by the breaking of a plank in the porch of a residence owned by the defendant and occupied by plaintiff and her husband, the learned jurist (now Chief Justice) who was the organ of the court

in the Clay case, as well as in the Badie case, declared the opinion of the court in the Clay case to be as follows:

"Our opinion is, that the provisions of the Civil Code that hold the owner of a building answerable for an injury that may befall another because of the landlord's neglect to make repairs, are subject to the general law of negligence, and that the obligation thus imposed by law upon the landlord may be dispensed with, not only by a lessee as a condition of his contract of lease, but by anyone desiring to occupy the house and willing to assume the risk."

From the quotation just made, it again appears that the court intimated, despite what was said in the Badie case—that a lessor, by a specific contract with his lessee, could well absolve himself of responsibility otherwise imposed upon him by law. In Ciacio vs. Carbajal, 145 La. 884-885, 83 South. 73, the court, discussing its former rulings in Schoppel vs. Daly and in Cristadora vs. Von Behren's Heirs, again seems to have intimated its approval of the law expressed by us in the Taul case. It was there said (possibly by way of obiter, considering the facts of the case):

"It will be observed that, in both of the cases cited, emphasis is placed on the fact that the plaintiffs were lawfully and rightfully on the leased premises, and their right to be there is traced, in each case, to the contract whereby the lessor acquired the right to occupy the premises and to open them to his or her friends and guests. There is however, a maxim of law and of common sense to the effect that no one can convey to another a greater right than he himself possesses; from which it would seem to follow that if, by contract, the lessees in the cited cases had bound themselves, or if by reason of the law, as applied to their own acts or omissions, they had become responsible for the safety of the buildings occupied by them, and had discharged their lessors from all liability to them in that respect, they could not, by entertaining their guests, confer upon them the right to recover, from their lessors, damages which they themselves

could not have recovered for personal injuries resulting from their failure to comply with their obligations to keep the buildings safe. In other words, whatever may be the right of a person with respect to an injury sustained from a falling wall or cornice, while walking on a public highway, it is difficult to perceive how a third person, entering leased premises under and by virtue of the right, and the invitation, of the lessees, can acquire any greater rights against the owner than the lessee possesses. Any limitation, whether by contract or law, upon the right of the lessee with respect to the use of such premises, must necessarily extend to those who claim under him. If a contract or lease, or the law, declares that certain leased premises shall not be used for a particular purpose, they can no more be so used by the family or friends of the lessee claiming through him, than by the lessee himself, and so, if the contract of lease, or the law, declares that the lessor shall not be liable for injuries sustained by the lessee by reason of the non-repair of the leased premises, the family or friends of the lessee, receiving injuries by reason of such non-repair, while on the premises in the right of the lessee, cannot recover that which he would have no right to recover."

In Bianchi vs. Del Valle, 117 La. 587, 42 South. 148, the court held that the wife of the lessee could not recover when it was the duty of her husband, under the law, to make repairs, on the theory that she derived her right to be on the premises from the lease, and that she was bound by its terms. In the present case, as in the Taul case, a like principle applies to one renting from the lessee as a roomer or on the premises as a visitor or guest.

For the foregoing reasons, we are of the opinion that the judgment appealed from is erroneous, and should be reversed.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be reversed and set aside, and that there now be judgment in favor of defendants, Mrs. Wilhelmina Young, wife of Jacob Young, and Jacob Young, dismissing plaintiff's demand at her cost in both courts.