The plaintiff, a laborer, having agreed to lease from John Gilbert, a tenant of defendant, a room in a dwelling house owned by defendant and one-half of which was leased to Gilbert, sustained physical injuries while he was moving his belongings into the room, and he seeks recovery in damages from defendant charging that the *Page 493 
injuries were caused by the defective condition of the premises. He alleges that in one of the walls of the room which he had agreed to occupy, there was a door leading into what he thought was a closet and that he obtained from Gilbert, the tenant, permission to use the space on the other side of the door for storage purposes; that when he attempted to step through the door he fell because there was no floor in that cabinet or small space, and that one of his feet went through the plaster ceiling of the room below.
Defendant avers that the part of the building in which the injury was sustained, that is the small unfloored space on the other side of the door in question, was not intended for use for dwelling purposes; that it was a part of the unfloored attic of the house and that the small door leading into it was put in the wall merely so that access might be had to the attic for repair purposes, and that when the house was leased to Gilbert the door in question had been nailed up so that no one could pass through it into that portion of the unfloored attic of the building. And he asserts that he is not liable to plaintiff for injuries sustained under such circumstances.
There was judgment below dismissing plaintiff's suit and he has appealed.
Most of the facts are not in dispute. The house is a very small, double dwelling which was bought by defendant, Bohrer, in April, 1935. For about 5 years preceding the accident, one side of the house in which the accident occurred (1416 St. Ann Street) had been leased to John Gilbert. The house is of a type very well known in New Orleans, a one-story, double frame building, with a second story or attic with dormer windows protruding through the sloping roof. The rooms of the second floor extend the full width of the house but do not extend the full length because of the sloping roof. In those second floor rooms there are walls cutting off from the useful portion of the attic that portion which, because of the sloping roof, cannot be used for living purposes since the roof trusses are too close to the floor joists. In the walls of those rooms and leading into those portions of the attic are small doors, the one in the room in question being 5 ft. 2 in. in height and 2 ft. 2 in. in width. These small unusable portions are not floored but the joists are lathed and plastered from below to form ceilings for the first floor rooms.
On the day of the accident, plaintiff had verbally contracted with Gilbert, the tenant, for the use of one of those second floor rooms and on that evening, with the aid of two other men, one of whom owned and operated a motor truck, he was moving his belongings into that room. He says that he noticed this door and that he asked Gilbert for permission to use the small portion of the attic to which that door afforded access. He also says that Gilbert gave him this permission and that he, plaintiff, did not know that there was no flooring in that part of the attic and that as he entered it with articles of furniture in his hands, his foot broke through the ceiling below, that he fell into a sitting position, straddling one of the joists, and sustained an injury for which he now seeks recovery.
On behalf of Bohrer, it is maintained that when he leased the house to Gilbert, that door, and others like it in the other rooms, had been nailed shut by his carpenter and that those portions of the unfloored attic on the other side of the said doors were not intended for use except in emergency to fix the roof or when it became necessary for such purpose to enter these very small cubby-holes. Bohrer maintains too that there was nothing defective about the house either resulting from his neglect to repair anything which may have decayed or as a result of vice in original construction, and that the accident resulted solely from the fact that plaintiff, Cheatham, made use of a portion of the building not intended for that kind of use.
The house had been placed by defendant in charge of his uncle, and there is nothing in the record which, to any extent, tends to contradict the statement of his uncle that when the house was leased to Gilbert originally, that door was nailed up and that the unfloored portion of the attic could not be used. The carpenter who had nailed up the door was also placed on the stand and he testified that he had so battened up the door that it could not be opened in the normal way.
The tenant, Gilbert, was not produced by plaintiff and, therefore, we find in the record no corroboration of plaintiff's testimony that Gilbert gave him permission to use the room. But whether Gilbert did give him permission or not is of no great importance since the record, without contradiction, shows that Gilbert, himself, did not have the right to open that door or to *Page 494 
make use of that portion of the attic which was behind it. Gilbert remained as a tenant in the building during the entire time, and it appears to us that there was no duty in Bohrer, or in his representative, to enter the building during that time to make certain that that door continued to be securely fastened against general use.
During the argument before us there was a suggestion that since the plaintiff's right to be in the house at all arose through his contract with Gilbert, a tenant, he could not, under any circumstances, recover, if, under the same circumstances, Gilbert, the tenant, could not have recovered. In other words, that under no circumstances, could he have had greater rights to recover from the owner of the house than would Gilbert have had had he been injured. This suggestion is faulty as was shown in Klein v. Young et ux., 163 La. 59, 111 So. 495, 497.
The rights of a tenant to recover for injury are controlled by Articles 2693-2695 of our Civil Code which impose certain obligations upon the lessor in favor of the lessee, but which obligations do not run in favor of a third person "* * * who is injured — either while rightfully inside or while outside of the building — by an accident resulting either from the owner's neglect to repair the building or from a vice or defect in its original construction. * * *."
These obligations, as the Supreme Court said in that case, "[are] in favor of the lessee only". But the Court went on to say that other obligations are imposed by law, Civil Code, Articles 670, 2315, 2322, upon the house owner, not as lessor, but merely because of his ownership of the house, and that these obligations run in favor of any person rightfully inside or while outside of the building. This Court had held, see Gallman v. Young, 3 La.App. 756, 758, that in no case might there be a recovery by a third person occupying a part of the premises through contract with or rights of the tenant unless, under the same facts, there might have been a recovery by the tenant, himself, had the tenant been injured.
Concerning the conclusion of this Court as above set forth, the Supreme Court said:
"The fundamental error in the foregoing illustration is in overlooking the distinction between the rights and obligations which are created by law and those which are created by contract. The obligation of every property owner to answer in damages for a failure to keep his property in such condition of repair that it will not be dangerous to other persons is imposed by law, by articles 670, 2315 and 2322 of the Civil Code. The obligation of a property owner to allow another person to use the property for any particular purpose can be imposed only by contract; and the obligee, in such case, of course, cannot convey to a third party any greater right than the obligee has acquired by virtue of the original contract. If it is stipulated in a contract of lease that the lessee shall make all necessary repairs to the leased premises, a sublessee, of course, cannot compel the lessor to bear the expense of any necessary repairs. But that has nothing to do with obligations arising ex delicto, from articles 670, 2315 and 2322 of the Civil Code."
But in spite of the fact that it is well settled, as a result of the Klein case, that there may be circumstances in which a third person rightfully in the premises as a sublessee of the tenant, or as a guest of the tenant, may recover from the owner of the building, even though the tenant could not have recovered, we do not think that the facts of the case before us justify recovery principally for the reason that in order that a person in the premises be permitted to recover under Civ. Code, Arts.670, 2315 and 2322, that person must be rightfully in the premises and that means, we think, rightfully in that portion of the premises in which the injury is sustained.
We entertain no doubt that an owner of a building may lease only a portion of his building, that he may set aside other portions for other purposes, or that he may set aside any portion as not contemplated for use for dwelling purposes, and we think that he has that right and may exercise it, and will not be liable to persons who use such portions set aside, provided he do all that should be reasonably required to prevent the use of those portions, and provided they are not obviously a part of the building intended for general use.
The door here which led into that unfloored portion of the attic was not of standard size; 5 ft. 2 in. is less than the height of a normal man, and 2 ft. 2 in. is a very narrow opening for a door. Furthermore, the door was not of standard mill construction but what is known as a battened door which means that it was constructed of narrow pieces of wood only a *Page 495 
few inches in width battened together from the inside. So there was nothing about its appearance which justified the belief that it gave access to another useful portion of the attic. When Bohrer or his representative had such a door nailed up so that it could not be used, there was nothing to justify the assumption that it would be used. It is well known in this community that many of the smaller houses, and some of the larger ones, have unfloored portions or unfloored spaces in attics which are not intended for use and we think it must have been obvious to anyone that this door opened into a space under the roof which could not be very high or large.
There was nothing defective about that portion of the attic, nothing had decayed or become weakened by use or time, and there was no vice in original construction. That portion of the attic was merely not intended for use. We do not mean to say that the owner of a building might lease it to a tenant and verbally agree with the tenant that he would not use a certain room, and that by that agreement the owner would relieve himself from liability if a guest of a tenant would walk into such a room, but we do think that the principle which we have in mind is applicable when, as we have said, there is nothing about the reserved portion to indicate that it would ordinarily be intended for general use.
In McCain v. Majestic Bldg. Co., 120 La. 306, 45 So. 258, we find a case which recognizes the principle that the owner of a building is not liable to a third person, rightfully within the building, for injuries sustained as a result of the tenant's failing to guard third persons rightfully using the building against obvious dangers. There a theatre building was constructed with an open doorway several feet above the ground and no stairway leading to the door. It had been so constructed by the owner for the convenience of the tenant in bringing in and taking out the scenery. The tenant had not only failed to guard against the possibility that third persons might use that doorway and fall to the ground, but, in fact, had erected an exit light over the doorway. The Supreme Court held that the owner of the building was not at fault, that there was nothing defective about the building either as a result of decay or because of vice in original construction, and that the accident resulted from no negligence on the part of the owner but from negligence of the tenant.
As we have said, we find no defect here and no fault in original construction, and therefore, the owner is not liable since the accident resulted either from fault of the tenant in unfastening the door and in permitting the subtenant to use it, or from negligence on the part of the subtenant, himself.
We may add that contributory negligence is not pleaded by defendant. However, we think that the accident did not result from "fault" on the part of the owner. And we add that unless there is "fault" there can be no recovery. Heath v. Suburban Building Loan Ass'n, La.App., 163 So. 546.
The judgment appealed from is affirmed.
Affirmed.